_____

| | |
|---|---|
| **JOSHUA JACKSON** ) | |
| ) | |
| Plaintiff ) | |
| vs. ) | **PLAINTIFF'S FIRST** |
| ) | **COMPLAINT** |
| + ) | |
| **THE UNIVERSITY OF PHOENIX, INC.,** ) | |
| a subsidiary of **APOLLO GROUP, INC.,** ) | |
| ) | |
| Defendants ) | |
| ) | |
| ) | |

_____

## I. INTRODUCTION

1.  Plaintiff, Joshua Jackson, brings this civil rights action alleging racial discrimination, racial harassment in the workplace, negligent infliction of emotional distress, wrongful termination and retaliation when he opposed discriminatory policies and practices at The University of Phoenix, Inc., a subsidiary of Apollo Group, Inc., in violation of his rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U. S. C. §2000 et seq., as amended by the Civil Rights Act of 1991, the Civil Rights Act of 1871, and 42 U.S.C. §1981. The Plaintiff seeks compensatory, declaratory, attorneys fees, punitive damages and front and back pay.

## II. JURISDICTION

2.  This case arises under the Constitution and laws of the United States, 28 U.S.C. §1331 and §1343; 42 U.S.C. Sec. §1981 (allowing suit to correct constitutional violations) and 42 U.S.C. §1988 (proving for attorney fee and litigation expense awards). The Plaintiff further invokes the pendant jurisdiction of this Court to hear and decide claims arising under State law

from the common nucleus of facts in this cause, all occurring in Fayetteville, North Carolina.

## III. PARTIES

3. Plaintiff Joshua Jackson is an African American resident and citizen of the United States and a resident of Cumberland County, North Carolina.

4. Defendant, The University of Phoenix, Inc, a subsidiary of Apollo Group, Inc., is a corporation incorporated under the laws of Arizona with a corporate address of 4025 S. Riverpoint Parkway, Phoenix, AZ 85040 and principle place of business at 4615 East Elwood Street, Phoenix, AZ 85040. It does business in North Carolina in the form of enrolling online students who live and work in North Carolina and in contracting online adjunct faculty in North Carolina.

6. Plaintiff was employed with The University of Phoenix, Inc from May 2008 to October 19, 2012 as a Enrollment Advisor. His work location was in Fayetteville, North Carolina.

7. Ashley Abrams was employed as the Enrollment Manager who supervised the Plaintiff in the Fayetteville office. Ms. Abrams supervised approximately fourteen (14) Enrollment Advisors of which six (6) were African Americans. Matthew J. Swanson was employed as the Director of Enrollment and was the Supervisor of Ashley Abrams and the office in Raleigh. Candice Morgan is employed with the Defendant as the Campus Director and is the immediate supervisor of Matthew J. Swanson.

## IV. FACTUAL ALLEGATIONS

8. Plaintiff was responsible for advising prospective undergraduate and graduate students regarding program, admissions and degree completion requirements, as well as

2

enrolling students for graduate, undergraduate and certificate programs.

9. Plaintiff accomplished his duties with the highest level of customer services through effective telephone, email and face-to-face communications. He conducted individual and groups presentations disseminating program information to potential students

10. Plaintiff maintained one of the highest rankings among Enrollment Advisors with regard to overall performance and customer satisfaction. In October 2009, Plaintiff applied for and was denied a Senior Enrollment Position. While Plaintiff was no longer considered for the position, other less qualified white co-workers continued to be considered.

11. Plaintiff and several other African Americans were subjected to a continuous pattern of disparate treatment by their supervisors in the manner in which work was assigned, the manner in which they were evaluated, and the overall manner in which they were treated. For example, African Americans including the Plaintiff's performance evaluation were lowered to reflect performance levels significantly below how they were actually performing, that they were refused training information, refused logistical support, the victims of false reports, and they were openly disrespected by management. This treatment was not imposed on the White Enrollment Advisors who were treated in a professional and positive manner.

12. It was established that the Fayetteville Office would be expanding and thus potential future management candidates were invited to compete for a Team Leader position. On several occasions, Plaintiff applied for the role of Team Leader, but on each occasion he was denied. While Plaintiff was no longer considered for these positions, other less qualified white co-workers were considered.

13. In another instance, Plaintiff assisted in the training of Mara Brown, a white

3

Enrollment Advisor. Ms. Brown was eventually selected as Team Leader over the Plaintiff even though she had less tenure and possessed less qualifications than the Plaintiff.

14. Under the supervision of Ms. Abrams, white employees were subjected to less scrutiny about their work assignments, the work assignments of the Plaintiff and other African Americans were degraded by Ms. Abrams, and the positive accomplishments by the Plaintiff (and other African Americans) was consistently overlooked when he applied for promotions and/or awards.

15. On several occasions, Ms. Abrams reprimanded the Plaintiff for deficiencies with his work performance that did not actually exist, but did not impose this same scrutiny for similarly situated white Enrollment Advisors.

16. White co-workers were given favorable shifts while the African American employees had to fill the less favorable shifts.

17. In February 2012, Plaintiff complained to Matthew J. Swanson and to Candice Morgan, Campus Director about the racial discrimination and hostile treatment he was being subjected to, but both supervisors were indifferent to the complaints of the Plaintiff.

18. However, shortly after he made his complaints to these supervisors about racial discrimination in his work environment, his work was drastically scrutinized more than his white co-workers. White co-workers were encouraged to monitor both the work and general activities of the Plaintiff, and his performance evaluations were downgraded under scrutiny different than his white co-workers.

19. In May 2012, Plaintiff applied for the position of Enrollment Management but was denied the promotion. While Plaintiff was no longer considered for the position, other less

qualified white co-workers were considered

20. Matthew Swanson, Candice Morgan and Ashley Abrams deliberately downgraded the work performance of the Plaintiff and other African Americans in order to make them vulnerable for layoffs and discipline.

21. On September 9, 2012 Plaintiff filed a charge of discrimination with the EEOC (Charge # 433-2012-02299) alleging discrimination on the basis of race.

22. Shortly thereafter, Apollo announced that it was closing the Fayetteville office and terminating the Plaintiff. This closure occurred despite the Fayetteville office previously making plans to expand the operations of this office. This closure was pretextual as the routine business and operations of the office continued to function with staff members who did not oppose discrimination.

23. The contracts of the African Americans who had voiced concerns about racial discrimination in the work place were terminated.

24. On October 17, 2012, Plaintiff filed a charge of discrimination with the EEOC (Charge # 4333-2012-00136) alleging retaliation for opposing racial discrimination.

## COUNT I
## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
## 42 USC 2000e-3 AND 42 USC 1981

25. The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set out herein

26. The Defendant, through the actions of Matthew Swanson, Candice Morgan and Ashley Abrams implemented a continuous pattern and practice of taking adverse employment actions against African-American employees in a discriminatory manner.

5

27. Plaintiff's complaints to Matthew Swanson and Candance Morgan about the racially hostile work environment were protected activities under Title VII.

28. Plaintiff was subjected to intense scrutiny with his work performance and his evaluations immediately after he complained about the racial harassment.

29. Furthermore, when the Plaintiff filed his EEOC charge in September 2012, the Defendants immediately retaliated by terminating his employment contract.

30. In terminating the Plaintiff from his position and for the other omissions or acts of harassment and discrimination that the Plaintiff encountered from the Defendants for having opposed discrimination, the Defendant violated the Plaintiff's rights as protected by Title VII of the Civil Right Act of 1964 by the creation of a hostile working environment based upon race and retaliation which resulted in his wrongful termination. The actions of the Defendant materially interfered with the terms and conditions of employment of the Plaintiff in violation of 42 U.S.C. §1981 and Title VII.

31. There is a causal link in time between the protected activities of Plaintiff and the aforementioned retaliatory acts of the Defendant.

32. Plaintiff Jackson filed charges with the Equal Employment Opportunity Commission regarding Defendant's alleged discriminatory conduct. A copy of the Notice of Right to Sue Letter issued by EEOC is hereby incorporated as Attachment A to this Complaint and was received on July 24, 2013.

## COUNT II
### RACE DISCRIMINATION IN VIOLATION OF THE CIVIL RIGHTS ACT
### 42 USC 2000e-3 AND 42 USC 1981

33. The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set out herein

34. During the course of Plaintiff's employment with Defendant, the Defendant, by and through its agents and employees, discriminated against the Plaintiff in the terms, conditions and privileges of employment in various ways, in substantial part because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq* and 42 U.S.C. §1981.

35. The above-described racial discrimination created a continuous pattern and practice of discrimination by the establishment of an intimidating, oppressive, hostile and offensive work environment which interfered with Plaintiff's emotional and physical well-being by him being treated differently than his white co-workers because he was African American.

36. As a result of this racially hostile work environment perpetrated by Defendant and maintained by the Defendant's failure to protect the Plaintiff from such discrimination, the Plaintiff suffered humiliation, emotional distress and physical pain.

## COUNT III
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

37. The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set out herein.

38. The Plaintiff placed the Defendant on formal notice of the racially hostile work environment.

39. The Defendant had at all times relevant to this action had a duty to maintain a work environment free of racial discrimination and retaliation.

7

40. The Defendants, through its employees and agents, failed to correct the racial and retaliatory misconduct of its supervisors which was negligent.

41. The behavior to which Plaintiff Jackson was subjected was reasonably foreseeable to cause and did cause the severe emotional distress Plaintiff has endured.

42. As a direct and proximate result of said acts, Plaintiff has suffered and continue to suffer loss of employment, loss of income, loss of other employment benefits, and has suffered and continued to suffer depression, high anxiety, sleepiness, humiliation, great expense, embarrassment and damage to his reputation.

43. Defendant's acts constituted negligent, wilful, wanton, and malicious conduct as defined in N.C.G.S. 1D-5(7).

## COUNT IV
## BREACH OF CONTRACT

44. The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set out herein.

45. The Plaintiff entered into a valid employment contract with the Defendant in May 2008.

46. The Plaintiff honorably performed all the terms and requirements of this Contract.

47. The Defendant wilfully and unilaterally breached this agreement by wrongfully terminating the Contract of the parties in retaliation for the Plaintiff opposing racial discrimination in the workplace.

**WHEREFORE,** the Plaintiff prays that the Court enter judgment in his favor by granting him the following relief:

1. That the Plaintiff have and recover compensatory damages in an amount in excess

of $10,000.00 against the Defendant;

2. Grant a declaratory judgment adjudging that the actions of the Defendant constituted violation of law and breach of contract as stated herein;

3. That the Court enjoin the Defendant from retaliating against the Plaintiff in any way for filing his EEOC charges, including, but not be limited to:

    a. Direct that all negative job performance evaluation be removed from his personnel file of the Plaintiff;

    b. Enjoin the Defendants from disseminating any negative job performance evaluation or other comments to others in the community;

4. That the Plaintiff recover both back and front wages from the Defendant;

5. That Plaintiff be awarded pre-judgment interest, post-judgment interest, and all costs of court incurred by Plaintiff herein;

6. That the Plaintiff have and recover punitive damages in an amount in excess of $10,000.00 for each claim alleged above to exemplify and punish the Defendant whose conduct in the matter was outrageous, pursued out of actual malice and a deliberate indifference to Plaintiff's rights sufficient to dissuade the Plaintiff;

7. That Plaintiff be awarded attorney's fees;

8. That the cost of this action be taxed to the Defendant;

9. That the Court grant such other and further relief as may be deemed just, fit, and proper;

10. That the Plaintiff be granted a jury trial.

RESPECTFULLY SUBMITTED, this  20th day of October, 2013.
.

/s/ James H. Locus, Jr.
James H. Locus, Jr.
Attorney for the Plaintiff
P.O. Box 331
Fayetteville, NC 28302
Phone (910) 630-1491
Fax: (910) 822-0389
BAR #: 13853

10